IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

FILED
NOV 18 2005
U.S. DISTRICT COURT
DISTRICT OF RHODE ISLAND

ANTHONY SABETTA :
:
:
v. : C.A. No. 05-425L
:
:
UNITED STATES OF AMERICA :

GOVERNMENT'S RESPONSE TO PETITION TO VACATE,
SET ASIDE OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255

In his Petition to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255, Anthony Sabetta ("Sabetta") raises a myriad of claims attacking his January 13, 2003 conviction for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Some of those claims target the actions of the Court, others are leveled against the performance of his trial counsel, James McCormick, Esq. As set forth below, the claims are all alike in one respect: they are meritless.

## I. BACKGROUND

### A. Procedural History

On November 29, 2000, a federal grand jury returned an indictment against Sabetta and Daniel Andino ("Andino"). The indictment, a copy of which is attached as Exhibit A, charged Sabetta with a single count: that on or about September 1, 2000, Sabetta, a convicted felon, possessed a firearm, a Colt revolver, in violation of 18 U.S.C. §§ 2, 922(g)(1) and 924(e). Andino, charged with the same crime, pled guilty and cooperated

with the government. On January 13, 2003, following a five-day trial, a jury convicted Sabetta. Based on his prior violent felony convictions, Sabetta was classified as an Armed Career Criminal for purposes of 18 U.S.C. § 924(e). (4/4/03:11.) On April 4, 2003, after observing that "it's a wonder he hasn't killed someone yet" (4/4/03:18), this Court sentenced Sabetta to 262 months of imprisonment. (4/4/03:21.)

Sabetta took an appeal to the First Circuit, which affirmed his conviction and sentence on June 24, 2004. United States v. Sabetta, 373 F.3d 75 (1st Cir. 2004)(attached as Exhibit B). The mandate issued on July 15, 2004. Sabetta filed a petition for writ of certiorari on September 16, 2004. The Supreme Court denied the petition on November 1, 2004.

**B. Facts of the Offense**

The evidence introduced at trial established that Sabetta knowingly possessed the Colt revolver on three separate occasions on September 1, 2000.[1]

**(i) The First Instance of Possession**

Shortly after midnight on September 1, 2000, Sabetta got into a fight with two men outside a house on Cleveland Avenue in

---

[1] At trial, Sabetta stipulated that he had a prior felony record. (1/9/03:151; 1/13/03:9.) Uncontroverted evidence established the remaining elements of the charge: that the revolver that Sabetta possessed was a working "firearm" and that it had traveled in interstate commerce. (1/9/03:78-79,148-150.)

Cranston, Rhode Island. (1/7/03:60-65,73-75; 1/8/03:19-28,36-39,81-90,97-100,113.) The two men, James Corio ("Corio") and Christopher Colardo, both testified that during the confrontation, Sabetta, Colardo's next-door neighbor, struck them with a black revolver that had a long barrel. (1/7/03:63-64,75,78; 1/8/03:23-28,39-44,81,84.) Just before striking Corio, Sabetta held the gun to Corio's head and asked him whether he was "ready to die." (1/7/03:63,80-82.) Sabetta then hit Corio several times on the side of the head with the gun, knocking him down. (1/7/03:63-64,82-84,92; 1/8/03:4-5.) Sabetta then turned on Christopher Colardo, swinging the gun at him and striking his upper lip. (1/8/03:26,45-47,71-74.) Corio and Christopher Colardo both described the revolver in some detail and stated that it matched the revolver that was introduced in evidence. (1/7/03:63-64,69-70; 1/8/03:25-26,33-34,43,73-74,78.) Both also testified that, as the police were arriving on the scene, Sabetta passed the gun to a nearby friend, Andino. (1/7/03:65-66,88-89,93; 1/8/03:28-29,48-50.)

Two other eyewitnesses, Andino and Jennifer Colardo, provided corroborating details on the key points. Andino confirmed that the fight had taken place and that Sabetta had been holding the black revolver at some point during the dispute. (1/8/03:156-162.) According to Andino, as the police

were arriving, Sabetta either passed the revolver to Andino or Andino took it from him (Andino could not recall whether he or Sabetta initiated the hand off). (1/8/03:160-162; 1/9/03:25,28, 34,58.) Jennifer Colardo testified that she overheard Sabetta tell Andino "take this" and that she saw Sabetta pass something to Andino. (1/8/03:89-90,109-110,121.)

**(ii) The Second Instance of Possession**

In the afternoon of September 1, 2000, Andino was attacked by two men on a Providence street, as part of a separate dispute. (1/8/03:167; 1/9/03:40.) Intent on revenge, Andino enlisted the support of Sabetta and Sabetta's cousin, John Chu ("Chu"). (1/8/03:167-168,172; 1/10/03:20.) Eventually all three men met together outside of Sabetta's house. (1/8/03:131-132,151-152,168-169; 1/9/03:40.) After the group had assembled, Sabetta handed Andino the black revolver, which was wrapped in a white rag. (1/8/03:169,171-172; 1/9/03:40-41.) Someone (probably Andino, but Andino could not recall for sure) then placed the gun in a space behind the glove compartment of Andino's rental car. (1/8/03:175-176; 1/9/03:42-46,54-55.) Both Jennifer Colardo and Mary Ann Colardo, who saw Sabetta and Andino's green convertible outside Sabetta's home, corroborated Andino's testimony. (1/8/03:91-92.) Mary Ann Colardo also saw Andino and a third person she could not identify with Sabetta. (1/8/03:131-

32.) With Sabetta at the wheel, the group then drove off in search of the men who had attacked Andino. (1/8/03:169,172-173.)

(iii) <u>**The Third Instance of Possession**</u>

Around 9:00 p.m. on September 1, 2000, while Sabetta, Andino and Chu were still driving around with the gun, a Cranston police officer spotted the green convertible. (1/9/03:81-84.) When the officer pulled nearer in his marked cruiser, Sabetta turned up a side street and parked, waiting for the cruiser to pass by. (1/8/03:173-174; 1/9/03:83-84.) Sabetta then turned into a different side street and waited again. (1/9/03:84-86.) The ruse failed. The officer ultimately stopped Sabetta and got out of his cruiser. (1/9/03:86-87.) As the officer approached, Sabetta and Andino were talking to each other and Sabetta was making motions that suggested that he was trying to hide something. (1/9/03:87-88,94,98.) After a backup team arrived, a second officer found the black revolver in a space behind the glove compartment. (1/9/03:101-106,115,121-123,128-135.) The gun was fully loaded. (1/9/03:132-133,135-137.) On the front passenger floor, beneath the glove compartment, was a white t-shirt. (1/9/03:135-136; Trial Exhibit 7.) On the rear passenger floor was more ammunition that fit the gun. (1/9/03:79-80,99-100.) Andino testified that the gun belonged to Sabetta. (1/9/03:54-55.)

## ARGUMENT

Sabetta contends that he is entitled to Section 2255 relief because: (1) the indictment, by citing to the aiding and abetting statute as well as 18 U.S.C. § 922(g)(1), improperly charged him with multiple offenses in the same count; (2) the Court, by giving a constructive possession instruction to the jury, improperly amended the indictment; and (3) his trial counsel, by not objecting to a jury note, by not objecting to the Court's constructive possession instruction, by not objecting to or contesting allegedly perjurous testimony by government witnesses, by not objecting to the sufficiency of the indictment, and by not interviewing and/or calling certain witnesses for the defense, provided ineffective assistance of counsel at trial.

Sabetta is not entitled to relief. Several of his claims are procedurally barred because he did not raise them at trial or on direct appeal. Furthermore, each and every one of his claims is substantively meritless.

### I. THE INDICTMENT DID NOT CHARGE SABETTA WITH MULTIPLE OFFENSES BY CITING TO THE AIDING AND ABETTING STATUTE

Count 1 of the indictment, the only count charged against Sabetta, charged him with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). At the conclusion of the charging language, the indictment also cited to 18 U.S.C.

§ 2, the aiding and abetting statute. Exhibit A. That statute provides that "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principle." 18 U.S.C. § 2. Sabetta argues that by citing to Section 2, the indictment improperly charged him with a "second offense", violating his "due process rights" and rendering the indictment "legally insufficient to comply with the grand jury clause of the Fifth Amendment." Sabetta also argues that this purported "second" charge was "fatally defective" because it did not include the actual statutory language -- "aids, abets, counsels, commands, induces or procures."

As a threshold matter, Sabetta cannot raise this claim here. A prisoner seeking relief under Section 2255 is procedurally barred from raising issues not raised at trial and on direct appeal unless he demonstrates both "'cause' and 'prejudice'"; or alternatively, that he is "'actually innocent.'" Brache v. United States, 165 F.3d 99, 102 (1st Cir. 1999) (quoting Murray v. Carrier, 477 U.S. 478, 485, 496 (1986)). Sabetta failed to raise his aiding and abetting issue at trial or on direct appeal. He has not even attempted to demonstrate any cause for his failure to do so or any resulting prejudice. He has not, and cannot, demonstrate that he is

actually innocent.[2] This is not an ineffective assistance of counsel claim.[3] Accordingly, the claim is procedurally barred.

In any event, Sabetta's aiding and abetting claim is substantively meritless. It is well-settled that "'aiding and abetting' is not a separate offense." United States v. Sanchez, 917 F.2d 607, 611 (1st Cir. 1990)(emphasis added). Rather, Section 2 "'simply makes those who aid and abet in a crime punishable as principles.'" Id. (quoting United States v. Thirion, 813 F.2d 146, 151 (8th Cir. 1987)). Accordingly, there was no "second offense" charged against Sabetta in Count 1 of the indictment. That Count charged him with being a felon in possession of a firearm, nothing more.

Nor was there any defect in the way that aiding and abetting was charged. "Aiding and abetting 'is an alternative charge in . . . every count, whether explicit or implicit.'" Sanchez, 917 F.2d at 611 (quoting United States v. McKnight, 799 F.2d 443, 445 (8th Cir. 1986)). Thus, the First Circuit has held

---

[2] "'Actual innocence' means factual innocence, not mere legal insufficiency." Bousley v. United States, 523 U.S. 614, 623-24 (1998)(citing Sawyer v. Whitley, 505 U.S. 333, 339 (1992)). In order to establish "actual innocence," a defendant must demonstrate that, "without the error, 'it is more likely than not that no reasonable juror' would have convicted him." Brache, 165 F.3d at 102 (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995).

[3] Claims of ineffective assistance of counsel are an exception to the rule; they may be raised for the first time during a Section 2255 proceeding. Massaro v. United States, 538 U.S. 500, 509 (2003).

that "the government may rely on an 'aiding and abetting' theory, although the indictment neither alleges nor adverts to it, except on a showing of unfair surprise." Sanchez, 917 F.2d at 611. If there is no requirement that Section 2 be referred to at all, of course there cannot be, as Sabetta claims, any requirement that the indictment charge the actual statutory language. Indeed, the indictment here followed the First Circuit's "better practice" of "hav[ing] noted upon it a reference to 18 U.S.C.A. § 2." Id, 917 F.2d at 611 n.3.[4]

## II. THE COURT DID NOT "AMEND" THE INDICTMENT BY GIVING A CONSTRUCTIVE POSSESSION INSTRUCTION

In those portions of his Motion described as "Issue 2" and "Issue 3", Sabetta contends that the Court should not have given the jury a constructive possession instruction because "constructive possession was not charged in the indictment." Sabetta argues that by giving such an instruction, the Court amended the indictment in violation of the Sixth Amendment.

The government's response is two-fold. First, because Sabetta did not raise this claim either at trial or on direct appeal, he is procedurally barred from raising it in a Section

[4] It is also worth noting that the government did not rely on an aiding and abetting theory at trial, and the Court did not give an aiding and abetting instruction to the jury. (1/13/03:2-22,27-29.) Accordingly, even assuming that inclusion of the actual language of Section 2 in the indictment was required for the government to rely on an aiding and abetting theory, the point is moot.

2255 motion. See pp. 7-8, supra. Second, this argument is substantively frivolous. The indictment charged Sabetta with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Among the elements of a Section 922(g)(1) charge is the defendant's knowing possession of a firearm. United States v. Tracy, 36 F.3d 187, 191 (1st Cir. 1994).[5] Constructive possession, like actual possession, is simply a type of possession, not a separate element of a Section 922(g)(1) charge. United States v. Van Horn, 277 F.3d 48, 54-55 (1st Cir. 2002)("Under settled law, 'possession may be actual or constructive, sole or joint.'")(quoting United States v. Vargas, 945 F.2d 426, 428 (1st Cir. 1991)); United States v. Zavala Maldonado, 23 F.3d 4, 6 (1st Cir. 1994)("Under settled law, 'possession' includes not merely the state of immediate hands-on physical possession but also 'constructive' possession . . . .") (emphasis added); United States v. Wight, 968 F.2d 1393, 1398 (1st Cir. 1992)("Today, we make explicit the obvious and find that the element of 'knowing possession' under section 922(g)(1) may be established by proving that the defendant was in constructive possession of a firearm."); United States v.

[5] The other elements are: (1) that, at the time of the possession, the defendant had "been convicted in any court of a crime punishable by imprisonment for a term exceeding one year"; and (2) that such possession was in or affecting interstate or foreign commerce. Id.

Alexander, 163 F.3d 426, 429 (7th Cir. 1998)("possession may be of two types, and constructive possession is one of them").

Indeed, the First Circuit has held that "[c]onstructive possession . . . is possession." United States v. Rogers, 41 F.3d 25, 29 (1st Cir. 1994)(emphasis in original). Accordingly, a requirement that the type of possession be charged in an indictment would be a requirement that the same element -- possession -- be charged twice. This cannot be, and is not, the law. See Wilson v. United States, 91 F.3d 147 (table), 1996 WL 403012, at 2 (7th Cir. 1996)(attached as Exhibit C)("Both actual and constructive possession of a firearm by a convicted felon is illegal . . . [and][t]hus neither the type of possession nor the evidence by which the government planned to prove possession at trial was an essential element that had to be set out in the indictment."); United States v. Ellison, 469 F.2d 413, 415 (9th Cir. 1972)("Possession as used in the indictment may mean actual possession or constructive possession.").

At bottom, the Court's instruction on constructive possession did not, as Sabetta claims, amend the indictment. It simply defined for the jury a type of possession long recognized by the First Circuit and supported by the evidence introduced at trial. The Court's instruction was entirely proper.

## III. SABETTA'S COUNSEL DID NOT PROVIDE INEFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL

In those portions of his Petition described as "Issue 4" and "Issue 5", Sabetta contends that his counsel made a number of errors at trial, each of which constituted ineffective assistance of counsel. For the reasons set forth below, all of Sabetta's ineffective assistance claims are meritless.

In Strickland v. Washington, 466 U.S. 668, 687-688 (1984), the Supreme Court established a two-part test for evaluating ineffective assistance of counsel claims. Under that test, a defendant must show: 1) that his attorney's performance fell below an objective standard of reasonableness; and 2) that he was prejudiced as a result of his attorney's deficient performance. Id.; Matthews v. Rakiey, 54 F.3d 908, 916 (1st Cir. 1995); Scarpa v. Dubois, 38 F.3d 1, 8-9 (1st Cir. 1994); United States v. Caggiano, 899 F.2d 99, 101 (1st Cir. 1990). It is the defendant's burden to establish both parts of the test, by a preponderance of the evidence. Gonzalez-Soberal v. United States, 244 F.3d 273, 277 (1st Cir. 2001).

With regard to the test's first part, "[c]ounsel's judgment is subject to highly deferential review," United States v. Gomes, 177 F.3d 76, 83 (1st Cir. 1999), and "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight."

Strickland, 466 U.S. at 689. "'[T]he Constitution does not guarantee a defendant a letter-perfect defense or a successful defense; rather the performance standard is that of reasonably effective assistance under the circumstances then obtaining.'" Singleton v. United States, 26 F.3d 233, 238 (1st Cir. 1994)(quoting Lema v. United States, 987 F.2d 48, 50 (1st Cir. 1993)). "Effectiveness does not require that counsel jump through every conceivable hoop, or engage in futile exercises." United States v. Pellerito, 878 F.2d 1535, 1540 (1st Cir. 1989)(citing United State v. Cronic, 466 U.S. 648, 656 n. 19 (1984)). Nor need counsel "chase wild factual geese when it appears, in light of informed professional judgment, that a defense is implausible or insubstantial as a matter of law, or . . . as a matter of fact and of the realities of proof, procedure and trial tactics." Cepulonis v. Ponte, 699 F.2d 573, 575 (1st Cir. 1983). Indeed, the Court "'must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" Lema, 987 F.3d at 51 (quoting Strickland, 466 U.S. at 689).

Prejudice, the second part of the Strickland test, exists when there is "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have

been different.'" Gonzalez-Soberal, 244 F.3d at 278 (quoting Strickland, 466 U.S. at 694). "[T]here is prejudice only if defendant establishes that he would probably have been acquitted absent his counsel's mistakes." Gomes, 177 F.3d at 83. Moreover, even if a defendant is able to show that counsel's error affected the outcome of his case, he is not necessarily entitled to Section 2255 relief. The Supreme Court has made clear that a prejudice analysis "focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective." Lockhart v. Fretwell, 506 U.S. 364, 369 (1993). A court should not "set aside a conviction or sentence solely because the outcome would have been different but for counsel's error." Id. at 369-70. Rather, relief is warranted only if a court also concludes that the result of the trial was "fundamentally unfair or unreliable." Id. at 369; Tejeda v. DuBois, 142 F.3d 18, 22 (1st Cir. 1998); Carey v. United States, 50 F.3d 1097, 1101 (1st Cir. 1995); Scarpa, 38 F.3d at 16.

The government will respond to each of Sabetta's ineffective assistance of counsel claims in turn.

### A. Trial Counsel's Failure To "Object[] To Note Handed Trial Judge"

Sabetta's first claim of ineffective assistance is based on his trial counsel's alleged error in failing to object to the

note the jury sent to the Court during its deliberations. Sabetta fails to articulate, however, what objection counsel could possibly have raised to the note. He does not, and cannot, cite to any case that would support an argument that a jury cannot send a note to the trial judge during its deliberations. Indeed, this is the practice in courthouses around the United States. There was nothing for Sabetta's counsel to object to.

Accordingly, Sabetta has not met his burden of showing how counsel's failure to make an unspecified objection to the jury's sending of a note to the Court constituted representation "outside the wide range of reasonable professional assistance." And even if Sabetta somehow could meet this first part of the Strickland test, he has not and cannot meet the test's second part. Nowhere does he articulate how his counsel's alleged error in failing to raise a groundless objection to the jury note resulted in prejudice, that is, raises a reasonable probability that the result of the proceeding would have been different. Nor has he, or can he, demonstrate that the result of the trial was "fundamentally unfair or unreliable."

**B. Trial Counsel's Failure To "Object[] To Trial Judge Giving A Different Charge To The Jury When The Jury Could Not Find The Petitioner Guilty Of Possession"**

Sabetta's second claim of ineffective assistance is based on his counsel's alleged failure to object to the Court's constructive possession instruction. Sabetta claims that this

failure to object constituted ineffective assistance because the instruction amounted to the Court giving a "different charge" to the jury after the jury "could not find the Petitioner guilty of possession."

The problems for Sabetta, however, are several. First, the jury did find him guilty of possession of the firearm. Second, for the reasons discussed in section II, supra pp. 9-11, the Court's constructive possession instruction did not amount to an amended indictment or a "different charge". Constructive possession is simply a type of possession. Accordingly, any objection to the Court's constructive possession instruction on the ground that it added a charge to the indictment would have been specious, and Sabetta's counsel cannot be faulted for having failed to raise it. Furthermore, because any such objection would have been properly overruled had Sabetta's counsel raised it, Sabetta cannot demonstrate prejudice as a result of his counsel's failure to raise it.

**C. Trial Counsel's Failure To Object To, Contest, or File Pre-Trial Motions Concerning Perjury By Witnesses For The Government**

Sabetta also takes issue with his counsel's handling of purported perjury by government witnesses. First, he claims that his counsel never objected when government witnesses were allegedly committing perjury. Second, he claims that his counsel never "contest[ed] the fact that [these witnesses] were

committing perjury." Third, he claims that his counsel erred by failing to file any pre-trial motions "against government witnesses that he knew were committing perjury."

Here too Sabetta is grasping at straws. As a threshold matter, he does not even identify which of the government's several witnesses allegedly committed perjury, the specific testimony that was purportedly perjurous, or the steps that his counsel may have taken to expose it. In any event, Sabetta's claim that his counsel never contested the testimony of the government's witnesses is simply wrong. His counsel extensively cross-examined the civilian witnesses against him: Corio, Christopher Colardo, Jennifer Colardo, Mary Ann Colardo and Andino. Sabetta does not, and cannot, articulate how his counsel's cross-examination of these witnesses amounted to ineffective representation, and any such claim is belied by the record. Nor can Sabetta's counsel be faulted for failing to raise a "perjury objection" during trial; no such objection exists. Similarly, there was no "pretrial" motion Sabetta's trial counsel could have made objecting to alleged perjury that had not yet taken place. Sabetta's claims of ineffective assistance on these grounds are frivolous.

**D. Trial Counsel's Failure To "Object To The Sufficiency Of The Indictment"**

Sabetta's claim that his counsel was ineffective for failure to make pre-trial objections to the indictment is also frivolous. Sabetta does not even attempt to argue how the indictment charging him with being a felon in possession of a firearm is insufficient. This is hardly surprising, because the indictment is undeniably sufficient.

Federal Rule of Criminal Procedure 7(c)(1) requires only "that the indictment be 'a plain, concise and definite written statement of the essential facts constituting the offense charged.'" United States v. Serino, 835 F.2d 924, 929 (1st Cir. 1987)(quoting Fed. R. Crim. P. 7(c)(1)). The elements of a Section 922(g)(1) charge are: (1) the defendant's knowing possession of a firearm; (2) that, at the time of the possession, the defendant had been convicted in any court of a crime punishable by imprisonment for a term exceeding one year; and (3) that such possession was in or affecting interstate or foreign commerce. United States v. Tracy, 36 F.3d 187, 191 (1st Cir. 1994). All of these elements are alleged in the indictment. Exhibit A. There was no valid pre-trial motion to the sufficiency of the indictment that Sabetta's counsel could have made. Accordingly, Sabetta cannot meet either part of the Strickland test.

**E. Trial Counsel's Failure To Investigate, Interview and Call Witnesses**

Sabetta's last claim of ineffective assistance centers on his trial counsel's failure to call certain witnesses who purportedly would have "provide[d] testimony beneficial, helpful, and supportive to corroborate the defense." While Sabetta claims that his counsel should have interviewed and called multiple witnesses, he actually identifies only one, an "Eddie Babbott". For purposes of this response, the government will assume that Sabetta informed his trial counsel of these additional witnesses and that his counsel did not interview them prior to trial. Even with the benefit of this assumption, however, Sabetta is still not entitled to relief, because he has not shown that any failure to call these purported witnesses at trial constituted unreasonable, "ineffective" representation, or that he was prejudiced by any such failure.

"The decision whether to call a particular witness is almost always strategic, requiring a balancing of the benefits and risks of the anticipated testimony." Lema v. United States, 987 F.2d 48, 54 (1st Cir. 1993). Counsel must consider numerous factors, including whether the witness will testify as anticipated, whether the witness will make a favorable or unfavorable impression on the jury, whether the jury will draw adverse inferences from the testimony, and the strength of the

government's case. Id. The decision to interview and/or call potential witnesses is evaluated in the light of the strategy devised by counsel. Id. at 55. Again, to obtain Section 2255 relief on this ground, Sabetta must overcome the presumption that his counsel's decision not to call these witnesses "might be considered sound trial strategy." Id. at 54 (quoting Strickland, 466 U.S. at 689)(internal quotation marks omitted).

The problem for Sabetta is that he provides so little information concerning his purported witnesses that this Court simply cannot evaluate whether Sabetta's counsel was "ineffective" for failing to call them, whether Sabetta was prejudiced by such failure, and whether the result at trial was fundamentally unfair or unreliable. With the exception of Babbott, Sabetta does not even identify the witnesses that his counsel should have interviewed and called. He provides no affidavits from these unidentified witnesses confirming that they even exist, let alone setting forth their willingness to testify, the specific facts that they would testify to, and their basis of knowledge for any facts they would offer. Instead, Sabetta merely states in his petition that these witnesses "witnessed the fight" between Sabetta, Corio and Christopher Colardo, and would have supported his defense had they been called. Sabetta offers little more with respect to Babbott. He claims that Babbott, like the unidentified

witnesses, was a witness to his fight with Corio and Christopher Colardo. While Sabetta claims that Babbott is a "less interested" witness who "witnessed everything that happened" and would have "corroborated the defense's version that Petitioner did not possess no gun", Sabetta provides no affidavit from Babbott confirming his existence, his willingness to testify for Sabetta, and setting forth the details of his anticipated testimony.

This is fatal to Sabetta's ineffective assistance claim. Such bare allegations cannot overcome the presumption that a decision not to call these witnesses constituted sound trial strategy, nor can they establish that Sabetta was prejudiced by any such failure, i.e., that the outcome at trial probably would have been different because these witnesses' testimony would have outweighed the testimony of three government witnesses placing a gun in Sabetta's hand (Corio, Colardo and Andino) and the corroborating evidence of another (Jennifer Colardo). Certainly, they are not enough to establish that the result at trial was "fundamentally unfair or unreliable." Lema, 987 F.3d at 54 & n.6 (rejecting ineffective assistance claim based on failure to call witness where petitioner "presented no affidavit from [the witness], and no credible evidence, that [the witness]'s testimony would have been available"); Espinosa-Sanchez v. United States, 79 F.3d 1136 (table), 1996 WL 120003,

at 1 (1st Cir. 1996)(attached as Exhibit D)(affirming denial of ineffective assistance claim based on failure to call witnesses where "conspicuously absent from both of the affidavits of [the witnesses] is any statement that either [witness] would have testified on behalf of appellant"); Dows v. Wood, 211 F.3d 480, 486-87 (9th Cir. 2000)(rejecting ineffective assistance of counsel claim for failure to call purported alibi witness where petitioner did not provide affidavit from witness and there was "no evidence in the record that this witness actually exists, other than from [petitioner]'s self-serving affidavit").

Furthermore, even assuming that Sabetta had provided the requisite affidavits from his unidentified witnesses and from Babbott, and that testimony from those witnesses would have outweighed the government's evidence concerning Sabetta's possession of the revolver during his fight with Corio and Christopher Colardo, Sabetta still cannot establish that the outcome of the trial probably would have been different had they testified, and that the result at trial was fundamentally unfair or unreliable. The evidence at trial demonstrated that apart from Sabetta's fight with Corio and Christopher Colardo, there were two additional instances of Sabetta's possession of a firearm which independently supported the jury's guilty verdict: (1) when Sabetta handed the black revolver to Daniel Andino wrapped in a white rag on the afternoon of September 1, 2000;

and (2) when at approximately 9:00 p.m. that night, Sabetta constructively possessed the black revolver as he, Andino and Chu drove through Cranston looking for Andino's assailants, until they were stopped by the Cranston Police.[6] Sabetta does not claim that the unidentified witnesses or Babbott witnessed these second and third independent instances of Sabetta's

---

[6] The evidence at trial concerning these two additional instances of possession was strong. Andino testified that Sabetta handed him Sabetta's black revolver in a white rag outside Sabetta's home on the afternoon of September 1, 2000, just before they set off in Andino's green convertible searching for the individuals who had beaten Andino. (1/8/03:168-70,171-72.) Andino's testimony was corroborated by the testimony of Jennifer Colardo, who observed Sabetta get into a green convertible outside Sabetta's home (1/8/03:91-92), by Mary Ann Colardo's testimony that she observed Sabetta, Andino and a third person she could not identify, along with Andino's green convertible, outside Sabetta's home (1/8/03:131-32), and by Trial Exhibit 7, a photograph of the front passenger floor of the green convertible that depicted a white rag or t-shirt on the floor beneath the glove compartment.

With respect to the third instance of possession, Officer Alan Davis testified that after he pulled behind the green convertible at around 9:00 p.m. on September 1, 2000, Sabetta twice tried to avoid him by pulling the car to the side of the road. (1/9/03:81-86.) After stopping the green convertible, Officer Davis observed Sabetta and Andino exchanging looks, mouthing words to each other, shifting their shoulders and reaching down. (1/9/03:87.) This evidence, together with Andino's testimony that Sabetta handed him the black revolver before they set off, demonstrated that Sabetta knew that the firearm was in the convertible. Moreover, the fact that Sabetta had given the firearm to Andino (1/8/03:169,171-172; 1/9/03:40-41), the fact that the firearm was located only a few feet from him behind the convertible's glove compartment (1/9/03:101-106,115,121-123,128-135), and the fact that he and Andino were engaged in a joint venture to find Andino's assailants (1/8/03:169,172-173), demonstrated that Sabetta had the power and the intention, either directly or through Andino, to exercise control over the firearm.

possession of a firearm. The evidence before the jury with respect to those instances would have been the same with or without testimony from Babbott or the unidentified witnesses. Accordingly, Sabetta has not met his burden of establishing that had his counsel called Babbott and/or the unidentified witnesses at trial, the outcome of the trial probably would have been different, or that the result of the trial was fundamentally unfair or unreliable.

## IV. SABETTA IS NOT ENTITLED TO AN EVIDENTIARY HEARING

Evidentiary hearings on Section 2255 motions, like such hearings on other motions, "are the exception, not the rule." United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993). "A party seeking an evidentiary hearing must carry a fairly heavy burden of demonstrating a need for special treatment." Id. The First Circuit has held that an evidentiary hearing is unnecessary where the Section 2255 motion: 1) is inadequate on its face, or 2) although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case. Id, at 225-26; Moran v. Hogan, 494 F.2d 1220, 1222 (1st Cir. 1974); United States v. Carbone, 880 F.2d 1500, 1502 (1st Cir. 1989). Indeed, a Section 2255 petition "is subject to dismissal, without an evidentiary hearing, if the grounds for relief . . . amount to mere 'bald' assertions without sufficiently particular and supportive allegations of fact."

Barrett v. United States, 965 F.2d 1184, 1186 (1st Cir. 1992)(citing Moran, 494 F.2d at 1222. The burden is on the petitioner to prove that he is entitled to a hearing, by a preponderance of the evidence. Id.; Myatt v. United States, 875 F.2d 8, 11 (1st Cir. 1989).

In considering whether a petitioner has carried this burden, the court "must take many of petitioner's factual averments as true, but the court need not give weight to conclusory allegations, self-interested characterizations, discredited inventions, or opprobrious epithets." McGill, 11 F.3d at 225. "[A] § 2255 motion may be denied without a hearing as to those allegations which, if accepted as true, entitle the movant to no relief, or which need not be accepted as true because they state conclusions instead of facts, contradict the record, or are inherently incredible." Id. (quoting Shraiar v. United States, 736 F.2d 817, 818 (1st Cir. 1984))(emphasis added). Indeed, on a motion for post-judgment relief, "'conclusory allegations unsupported by specifics are insufficient to require a court to grant an evidentiary hearing.'" United States v. Michaud, 925 F.2d 37, 39 (1st Cir. 1991)(quoting Phillips v. Murphy, 796 F.2d 1303, 1304 (10th Cir. 1986))(emphasis added). Furthermore, when, as here, a Section 2255 petition "is presented to the judge who presided at the petitioner's trial, the judge is at liberty to employ the

knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing." McGill, 11 F.3d at 225.

Given this standard, it cannot be seriously argued that Sabetta is entitled to an evidentiary hearing. His first two claims, targeting the citation to the aiding and abetting statute in the indictment and the Court's constructive possession instruction, are strictly legal claims that, as discussed in parts I and II above, are completely unsupported by the relevant law and are therefore facially invalid. Also facially invalid are Sabetta's ineffective assistance of counsel claims based on his counsel's failure to object to the jury note, this Court's constructive possession jury instruction, the purported perjury by government witnesses, and the sufficiency of the indictment. As described in parts III A., B., C., and D. above, there was no legal basis for raising any such objections.

Nor is Sabetta entitled to an evidentiary hearing on his claim that his counsel erred by failing to interview and call at trial certain unidentified witnesses and Babbott. As noted in part III E. above, other than Babbott, that claim does not even identify who Sabetta's purported "outcome changing" witnesses are. With respect to all of these witnesses, including Babbott, Sabetta's motion is utterly devoid of specifics as to what they would testify to. As already noted, he provides no affidavits

from his purported witnesses confirming their existence and their willingness to testify, and setting forth precisely what they would testify to. It is not enough for Sabetta to say that these witnesses would have corroborated his theory of defense and changed the outcome of the trial. That is merely the sort of "conclusory allegation" and "self-interested characterization" unsupported by specifics that the First Circuit has held is insufficient. McGill, 11 F.3d at 225. Accord, David v. United States, 134 F.3d 470, 478 (1st Cir. 1998)("Allegations that are so evanescent or bereft of detail that they cannot reasonably be investigated (and, thus, corroborated or disproved) do not warrant an evidentiary hearing."); Mason v. United States, 42 F.3d 1391 (table), 1994 WL 675126 (7th Cir 1995)(attached as Exhibit E)(affirming denial of petitioner's request for hearing on Section 2255 motion because petitioner "offered no affidavits or other evidence to support his claim" of ineffective assistance of counsel for failure to call witnesses; mere allegation that witness "would provide favorable testimony" insufficient to trigger evidentiary hearing).

Finally, even had Sabetta provided the requisite affidavits, he still would not be entitled to an evidentiary hearing. As already noted, Sabetta's additional witnesses at best would help him defend against the first instance of his possession of a firearm, the fight with Corio and Christopher

Colardo. He does not allege that they would help him defend against the second or the third instances of possession, both of which, as discussed above, amply support the jury's verdict of guilt. There is thus no need for an evidentiary hearing here.

**CONCLUSION**

For the foregoing reasons, Sabetta's Section 2255 petition should be denied and dismissed.

Respectfully submitted,

UNITED STATES OF AMERICA
By its Attorneys,

ROBERT CLARK CORRENTE
United States Attorney

PETER F. NERONHA
Assistant U.S. Attorney

Dated: November 18, 2005

Certificate of Service

I hereby certify that on the 18th day of November, 2005, a copy of the within Government's Response To Petition To Vacate, Set Aside Or Correct Sentence Pursuant To 28 U.S.C. § 2255 was mailed by first class mail to Anthony Sabetta, Reg. No. 04954-070, FCI, P.O. Box 1500, El Reno, Oklahoma, 73036.