H

Briefs and Other Related Documents

United States Court of Appeals,
First Circuit.
UNITED STATES of America, Appellee,
v.
Anthony SABETTA, Defendant, Appellant.
No. 03-1506.

Heard Feb. 4, 2004.
Decided June 24, 2004.

Background: Defendant was convicted in the United States District Court for the District of Rhode Island, Lagueux, Senior District Judge, of being a felon in possession of a firearm, and defendant appealed.

Holdings: The Court of Appeals, Torruella, Circuit Judge, held that:

(1) trial judge erred in failing to allow defense counsel to suggest an appropriate rejoinder before answering question in jury note;

(2) trial court's failure to allow defense counsel to suggest an appropriate rejoinder before answering question in jury note was harmless;

(3) trial judge did not invade province of jury by using an example involving the scenario of case to illustrate definition of constructive possession in response to jury question;

(4) trial court's failure to define term "knowingly," as used in jury instruction, was not plain error; and

(5) admission of testimony that defendant's friend wanted to shoot individuals who had previously attacked him was not abuse of discretion.

Affirmed.

West Headnotes

[1] Criminal Law ⚷863(2)
110k863(2)
Trial judge erred in failing to allow defense counsel to suggest an appropriate rejoinder before answering question in jury note.

[2] Criminal Law ⚷863(2)
110k863(2)
Preferred practice for handling a jury message should include these steps: (1) the jury's communique should be reduced to writing; (2) the note should be marked as an exhibit for identification; (3) it should be shown, or read fully, to counsel; and (4) counsel should be given an opportunity to suggest an appropriate rejoinder, and if the note requires a response ore tenus, the jury should then be recalled, the note read into the record or summarized by the court, the supplemental instructions given, and counsel afforded an opportunity to object at side-bar.

[3] Criminal Law ⚷1174(1)
110k1174(1)
A trial court's error in failing to inform counsel about a jury note will not require reversal if the error is harmless.

[4] Criminal Law ⚷1174(1)
110k1174(1)
Trial court's failure to allow defense counsel to suggest an appropriate rejoinder before answering question in jury note was harmless; counsel was present when the jury's questions were read and answered, giving him the opportunity to object or to request a side-bar if he believed the judge's answers to be incorrect or unfairly prejudicial, and once jury retired, trial judge asked if anyone wanted to put anything on the record, to which defense counsel stated he had no objection to the instruction.

[5] Criminal Law ⚷863(2)
110k863(2)
Trial judge did not invade province of jury, in violation of defendant's Sixth Amendment rights, by using an example involving the scenario of case to illustrate definition of constructive possession, rather than re-reading definition of constructive possession, in response to jury question regarding whether being in vehicle that contained concealed firearm constituted possession, in prosecution for being a felon in possession of a firearm; jury was required to determine whether defendant knew that gun was in vehicle's glove compartment and whether defendant had intention to exercise dominion and control over gun, and judge's rejoinder did not answer either of those questions. U.S.C.A. Const.Amend. 6.

[6] Criminal Law ⚷1038.1(2)
110k1038.1(2)
The plain error hurdle, high in all events, nowhere

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

looms larger than in the context of alleged instructional errors.

[7] Criminal Law ⚿1030(1)
110k1030(1)
Under the plain error standard, defendant must establish: (1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings.

[8] Criminal Law ⚿822(1)
110k822(1)
Review of an erroneous jury instruction is evaluated in light of the entire charge.

[9] Criminal Law ⚿1038.1(6)
110k1038.1(6)
Trial court's failure to define term "knowingly," as used in jury instruction governing crime of being a felon in possession of a firearm, was not plain error, as term could reasonably have been understood by a lay jury. 18 U.S.C.A. § 924(a)(2).

[10] Weapons ⚿17(3)
406k17(3)
Admission of testimony that defendant's friend wanted to shoot individuals who had previously attacked him was not abuse of discretion, in prosecution for possession of a firearm by a felon which was premised on discovery of gun in automobile's glove compartment; evidence possessed contextual significance, in that it explained testimony in the record as to why friend asked defendant to bring his gun and why there was a gun in the automobile.

[11] Criminal Law ⚿1153(1)
110k1153(1)
Court of Appeals reviews a trial court's decision to admit testimony for abuse of discretion.

[12] Criminal Law ⚿1153(1)
110k1153(1)
Only rarely, and in extraordinarily compelling circumstances, will the Court of Appeals, from the vista of a cold appellate record, reverse a district court's *on-the-spot* judgment concerning the relative weighing of probative value and unfair effect of evidence.

[13] Criminal Law ⚿361(1)
110k361(1)
Evidence that pertains to a chain of events forming the context and set-up of the crime, helping to complete the story of the crime on trial, is admissible in appropriate cases where it possesses contextual significance.

*77 Jane Elizabeth Lee, for appellant.

Donald C. Lockhart, Assistant United States Attorney, with whom Peter F. Neronha, Assistant United States Attorney and Craig N. Moore, Acting United States Attorney, were on brief, for appellee.

Before BOUDIN, Chief Judge, TORRUELLA and HOWARD, Circuit Judges.

TORRUELLA, Circuit Judge.

A jury convicted defendant-appellant Anthony Sabetta of violating 18 U.S.C. §§ 922(g) and 924(e), which prohibit a felon from possessing a firearm. The district court sentenced him to 262 months in prison and a five year term of supervised release. Sabetta appeals, claiming that the district court erred by: (1) responding to a jury question without first showing or reading the jury note to counsel; (2) responding to the jury's question by using an example involving the facts of the case; (3) failing to define the term "knowingly"; and (4) admitting certain testimony. After careful review, we affirm.

## I. *Background*

In the early morning on September 1, 2000, Sabetta, Daniel Andino, and Sabetta's girlfriend were going out to eat. While leaving his Cranston, Rhode Island home, Sabetta encountered James Corio and Christopher Colardo. A fight ensued in the front yard. Neighbors called the police and reported the disturbance. The police arrived to investigate. By the time they arrived, however, Sabetta was no longer at the scene.

In the afternoon of September 1, Andino was attacked by two men in connection with a separate dispute. Andino called Sabetta and told him about the altercation. He asked Sabetta if Sabetta would drive Andino's car and help Andino look for his attackers. Sabetta agreed and drove Andino's car in search of Andino's attackers.

Also in the afternoon of September 1, Colardo's

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

mother and sister went to the police station to inform the police that Sabetta had possessed a gun during the early morning fight. Neither Colardo's mother nor any of the other witnesses interviewed by the police earlier that day had mentioned a gun. Colardo's mother gave the police the make, model, and license number of Andino's car.

In the evening of September 1, while Sabetta and Andino were searching for Andino's attackers, a Cranston police officer, responding to Colardo's report, stopped Andino's car, which Sabetta was driving. The police searched the car and found a gun in a hidden compartment behind the glove compartment. Sabetta and Andino were arrested.

Sabetta was charged in federal district court with being a felon in possession of a *78 firearm. [FN1] On April 6, 2001, Sabetta was convicted and sentenced. Sabetta appealed his conviction, and this court reversed and remanded for a new trial after the government conceded that some of the prosecutor's closing remarks were improper and prejudicial.

FN1. Sabetta stipulated that he was a convicted felon as defined by 18 U.S.C. §§ 922(g) and 924(e)
.

On January 7, 2003, Sabetta's second trial commenced. Sabetta was again convicted and sentenced. He appeals the conviction.

II. *Analysis*

A. The jury's note

[1] On January 13, 2003, after five days of trial, the jury retired to deliberate. After deliberating for three hours, the trial judge was informed that the jury had two questions. The trial judge brought the jury back into the courtroom. With all parties present, the trial judge learned, for the first time, that the jury had reduced its questions to writing. The judge read the note and stated: "Your first question is, what is the definition of possession ... [and][t]he second question is, does being in a vehicle that contains a concealed firearm constitute possession?" Without giving counsel an opportunity to discuss possible answers to the jury questions, the judge answered them.

Immediately after the jury left the courtroom to deliberate further, the judge asked the lawyers if "anyone want[s] to put anything on the record?" Defense counsel stated he wanted to "think for a second" and then stated that he had no objection. Forty minutes later, the jury found the defendant guilty.

[2] In this circuit, the

> preferred practice for handling a jury message should include these steps: (1) the jury's communique should be reduced to writing; (2) the note should be marked as an exhibit for identification; (3) it should be shown, or read fully, to counsel; and (4) counsel should be given an opportunity to suggest an appropriate rejoinder. If the note requires a response *ore tenus,* the jury should then be recalled, the note read into the record or summarized by the court, the supplemental instructions given, and counsel afforded an opportunity to object at side-bar.

*United States v. Maraj,* 947 F.2d 520, 525 (1st Cir.1991) (footnote omitted); *see also Shields v. United States,* 273 U.S. 583, 588, 47 S.Ct. 478, 71 L.Ed. 787 (1927) (holding that "[w]here a jury has retired to consider of its verdict, and supplementary instructions are required ... they ought to be given either in the presence of counsel or after notice and an opportunity to be present"). In the case before us, the jury note was not marked as an exhibit, and counsel was not given an opportunity to suggest an appropriate rejoinder before the trial judge answered the jury's questions.

[3] Despite the supplemental instructions being given in a manner contrary to circuit practice, a trial court's error will not require reversal if the error is harmless. *See United States v. Parent,* 954 F.2d 23, 25 (1st Cir.1992) (stating that "a trial court's error in failing seasonably to inform counsel about a jury note does not require reversal if the error is benign"). *79 This circuit has not yet taken a position on which harmless error standard applies when a trial court fails to disclose or discuss a note from a deliberating jury. *See Parent* at 25, n. 5; *Maraj,* 947 F.2d at 526. Either the stricter standard, asking whether the error was harmless beyond a reasonable doubt, *see Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), or the more lenient standard, asking whether the error had substantial and injurious effect or influence vis-a-vis the judgment, *see Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 90

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

L.Ed. 1557 (1946), applies. Yet again, we need not decide which standard applies as the error in this case was harmless under either standard.

[4] The trial judge's failure to allow counsel to suggest an appropriate rejoinder was harmless beyond a reasonable doubt because counsel was present when the jury's questions were read and answered. *Cf. Rogers v. United States,* 422 U.S. 35, 39, 95 S.Ct. 2091, 45 L.Ed.2d 1 (1975) (harmful error for court to respond to a jury note without informing counsel of the note); *Parent,* 954 F.2d at 27 (same); *United States v. Neff,* 10 F.3d 1321, 1322 (7th Cir.1993) (same). Defense counsel thus had the opportunity to object or to request a side-bar had he believed the judge's answers to be incorrect or unfairly prejudicial. *See Maraj,* 947 F.2d at 525 (stating that "[i]f the note requires a response *ore tenus* ... the supplemental instructions [should be] given, and counsel afforded an opportunity to object at side-bar"). Unlike cases where the defendant was "kept in the dark" regarding the existence or content of the jury's note, in this case Sabetta's counsel had the ability to object before the jury's note was read, after the jury's note was read, during the court's rejoinder, or after the court's rejoinder. *Compare Parent,* 954 F.2d at 24 (counsel was "kept in the dark" regarding jury's note and judge's reply). Being present when the jury's note was first read and answered also afforded Sabetta's counsel the opportunity to "prime the pump of persuasion," had he been inclined to do so. *See Parent,* 954 F.2d at 24 (stating that not having the opportunity to "prime the pump of persuasion" can be an injury).

Although it may be possible for a harmful error to occur even when counsel has an opportunity to object, in this case it is clear that there was no such error. Once the jury retired, the trial judge asked if "anyone want[s] to put anything on the record." After taking a moment to think about it, defense counsel stated he had no objection to the instruction.

As a result, we hold that the district court committed an error by not giving Sabetta an opportunity to suggest an appropriate rejoinder before the trial judge answered the jury's questions, but such an error was harmless beyond a reasonable doubt. *See Maraj,* 947 F.2d at 526 (holding that an error was harmless beyond a reasonable doubt because the "judge's comments were neither unduly coercive nor arguably unsatisfactory. Moreover, had the full note been contemporaneously disclosed, there was nothing more that defense counsel could appropriately have done.").

B. The judge's rejoinder

[5] Sabetta contends that the trial judge's answer to the second question in the jury note invaded the province of the jury as the finder of fact and thus violated his Sixth Amendment right to a trial by jury. The second question posed by the jury was "[D]oes being in a vehicle that contains a concealed firearm constitute possession?" The judge responded:

> Now I discussed constructive possession with you, and I think that comes up as a ***80** result of your second question here.... [T]here's several requirements for constructive possession. If, for example, someone is in a vehicle and knows, knows that a gun is in the glove compartment, and has the intention to exercise dominion and control over that item, that's constructive possession. So that illustrates the difference between constructive possession and actual possession.

[6][7][8] Because Sabetta's counsel did not object to this instruction at trial, we review for plain error. *See United States v. Paniagua-Ramos,* 251 F.3d 242, 246 (1st Cir.2001). "The plain error hurdle, high in all events, nowhere looms larger than in the context of alleged instructional errors." *Id.* (citation omitted). Under the plain error standard, Sabetta must establish "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." *United States v. Duarte,* 246 F.3d 56, 60 (1st Cir.2001) (citations omitted). Review of an erroneous jury instruction is evaluated in light of the entire charge. *Jones v. United States,* 527 U.S. 373, 390-91, 119 S.Ct. 2090, 144 L.Ed.2d 370 (1999).

The Sixth Amendment grants a defendant in a criminal case the right to a trial by jury. A district court must use extreme caution in answering questions from juries so as not to usurp the jury's fact finding role. As we have noted on many occasions, "undeniably inherent in the constitutional guarantee of trial by jury is the principle that a court may not step in and direct a finding of contested fact in favor of the prosecution regardless of how

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

overwhelmingly the evidence may point in that direction." *United States v. Rivera-Santiago,* 107 F.3d 960, 965 (1st Cir.1997) (citations and quotations omitted); *United States v. Argentine,* 814 F.2d 783, 788 (1st Cir.1987).

In this case, the trial judge's response to the jury's question was not ideal. Instead of re-reading the definition of constructive possession for the jury, the judge used an example, involving the scenario in the case, to illustrate the definition of constructive possession. Despite the trial judge's poor selection of an example based on the facts of the case, the judge's answer to the jury's question did not usurp the jury's fact finding role.

During the trial, the prosecution attempted to prove that Sabetta knew the gun was in the glove compartment and that he intended to exercise control over the gun. The defense attempted to prove that Sabetta was merely in a car that contained a concealed weapon. The jury, unclear about the requirements of constructive possession, inquired if "being in a vehicle that contains a concealed firearm constitute[s] possession." In response, the trial judge properly informed the jury that "there's several requirements for constructive possession." The judge then explained that constructive possession exists "[i]f, for example, someone is in a vehicle and knows, knows that a gun is in the glove compartment, and has the intention to exercise dominion and control over that item." The jury, as the finder of fact, was required to determine whether the defendant knew that a gun was in the glove compartment and whether the defendant had the intention to exercise dominion and control over the gun. The judge's rejoinder did not answer either of these questions for the jury. *Compare Rivera-Santiago,* 107 F.3d at 965-66 (holding that an error occurred because the judge's answer encouraged the jury to believe certain testimony); *United States v. Argentine,* 814 ***81** F.2d 783, 787 (1st Cir.1987) (holding that an error occurred because the "judge's handling of the jury question relieved the prosecution of [its] burden in an unfair way"). Although it would have been preferable for the judge to limit his rejoinder to re-reading the definition of constructive possession, the judge's rejoinder did not constitute plain error because the judge did not usurp the jury's fact finding role.

C. Defining the term "knowingly"

The trial court instructed the jury that the crime of felon in possession of a firearm requires that the defendant "knowingly possessed the firearm in question." The court then explained that actual possession occurs when "a person ... knowingly has direct physical control over a thing at a given time." The court explained that constructive possession occurs when "[a] person who, although not in actual possession, knowingly has both the power and intention at a given time to exercise dominion or control over a thing, either directly or through another person, or persons."

Sabetta's counsel originally objected to this charge because he "didn't hear knowledge of the presence of the firearm" in the court's definition of possession. In response to this objection, the trial judge informed counsel that the instructions contained the phrase "knowingly has the power and intention at a given time to exercise dominion or control." Upon hearing this, defense counsel dropped the issue and replied "[t]hank you."

[9] On appeal, Sabetta argues that the trial court erred because it failed to define the term "knowingly." During the trial, Sabetta objected to the original charge because he mistakenly believed the term "knowingly" was not included. Sabetta never objected that the term "knowingly" was not defined. Thus, we review any error resulting from the absence of the definition of the term "knowingly" for plain error. *See Paniagua-Ramos,* 251 F.3d at 246.

To prove the crime of felon in possession, the prosecution, obviously, must prove possession. To do so under 18 U.S.C. § 924(a)(2), the prosecution must establish that the defendant "knowingly" possessed the firearm. Although the court instructed the jury that it must find that the defendant "knowingly possessed the firearm," the defendant argues it was error not to define the term "knowingly" as an "act ... done voluntarily and intentionally, not because of mistake or accident." This circuit has never required that the term "knowingly" be defined when instructing the jury on the charge of felon in possession. [FN2] Rather, this circuit has generally held that terms a reasonable jury can understand do not need further definition. ***82** *Cf. United States v. Adams,* 305 F.3d 30, 34 (1st Cir.2002) (stating that the term

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

"altered" is "not some highly obscure or special-purpose term that cries out for elaboration"); *United States v. Vega-Figueroa,* 234 F.3d 744, 756-57 (1st Cir.2000) (stating that the terms "organizer," "supervisor" and "manager" are generally understood by the average person and do not need defining); *United States v. Blasini-Lluberas,* 169 F.3d 57, 67 (1st Cir.1999) (holding that " 'materiality' is not such a technical concept outside of the jurors' experience that failure to define it rises to the level of plain error"); *United States v. Fulmer,* 108 F.3d 1486, 1495 (1st Cir.1997)(stating that the word "intimidate" is not outside a juror's understanding such that failure to define the word would be an error); *United States v. Tormos-Vega,* 959 F.2d 1103, 1112 (1st Cir.1992) (stating that the term "induce" does not need to be elaborated for a jury to understand its meaning). "Although explicit definition of statutory terms and other legal parlance sometimes may be helpful in jury instructions, we repeatedly have held such elaboration to be unnecessary when, taken in the context of the charge as a whole and the evidence in the case, the tenor of a word or phrase is reasonably clear." *United States v. Alicea,* 205 F.3d 480, 484 (1st Cir.2000). The term "knowingly," as it was used in this jury instruction, could reasonably have been understood by a lay jury and further definition of the term was unnecessary. *See United States v. Gary,* 341 F.3d 829, 834-35 (8th Cir.2003), *cert. denied,* 540 U.S. 1139, 124 S.Ct. 1128, 157 L.Ed.2d 949 (2004) (holding that the term "knowingly," as it is used in § 922(g), is within the understanding of the lay juror).

FN2. Sabetta claims a footnote in *Parent,* 954 F.2d at 26, n. 7, requires that the meaning of the term "knowingly" be expounded. *Parent* does not so hold. Rather, *Parent* discussed how a court's supplemental instruction failed adequately to connect the definition of constructive possession with the scienter requirement, as it had done in the jury's original instruction. *See id.* at 24, n. 2.
Sabetta also claims that the First Circuit Pattern Jury Instructions require the term "knowingly" to be defined. The Pattern Jury Instructions do include a definition of "knowingly." *See* Pattern Criminal Jury Instructions for the District Courts of the First Circuit § 4.06 (2003). As we have previously held, however, the pattern instructions are precatory, not mandatory. *See United States v. Gomez,* 255 F.3d 31, 39, n. 7 (1st Cir.2001). Indeed, the preface to the Pattern Instructions states that "it bears emphasis that no district judge is required to use the pattern instructions, and that the Court of Appeals has not in any way approved the use of a particular instruction." Pattern Criminal Jury Instructions for the District Courts of the First Circuit (preface).

D. Admission of testimony

[10] Andino, who had pleaded guilty to the charge of felon in possession, testified at Sabetta's trial regarding the incidents that occurred subsequent to Andino's being attacked. Andino testified that he called Sabetta so that "we can take care of that." The prosecutor inquired what "take care of that" meant. Sabetta's counsel promptly objected on the basis of relevance and the objection was overruled.

Andino then explained that: "I wanted to retaliate, and I had a gun but it didn't work, and I wanted basically [Sabetta's] help to get the kids back." The prosecutor then asked Andino "[w]hat help were you looking for?" Defense counsel objected and was overruled. Andino replied that "I wanted to use his gun." The prosecutor asked, "[t]o do what?" Defense counsel objected again on the basis of relevance and was again overruled by the judge, who stated "it's relevant." Andino finally replied, "I was angry. I wanted to shoot both of the kids that jumped me." Andino also testified that before embarking on their mission, Sabetta handed Andino Sabetta's gun and then Andino placed the gun in a secret compartment behind the glove compartment.

[11] Defense counsel moved to strike Andino's statement that he wanted to shoot his attackers. The trial judge denied the motion to strike. We review a trial court's decision to admit testimony for abuse of discretion. *United States v. Smith,* 292 F.3d 90, 98 (1st Cir.2002).

Sabetta contends that Andino's testimony had no probative value because the fact that Andino wanted to shoot his attackers had no relation to whether Sabetta possessed a gun. Sabetta further contends that even if there was probative value to Andino's testimony, it was substantially outweighed by the prejudicial affect of the testimony.

[12] "Only rarely--and in extraordinarily compelling circumstances--will we, ***83** from the vista of a cold appellate record, reverse a district court's on-the-spot judgment concerning the relative weighing of probative value and unfair effect."

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*Smith,* 292 F.3d at 99 (quoting *Freeman v. Package Mach. Co.,* 865 F.2d 1331, 1340 (1st Cir.1988) (quotation marks omitted)). We refuse to do so here.

[13] Evidence that pertains "to a chain of events forming the context ... and set-up of the crime, helping to complete the story of the crime on trial ... [is admissible in appropriate cases] ... where it possesse[s] contextual significance." *United States v. Ladd,* 885 F.2d 954, 959 (1st Cir.1989) (quotations, citations, and footnote omitted) (first ellipses in original). The testimony that Andino wanted to shoot his attackers explains testimony in the record. For example, Andino's testimony explains why Andino asked Sabetta to bring his gun and why there was a gun in the car. *See, e.g., United States v. Weems,* 322 F.3d 18, 25 (1st Cir.2003) (testimony that house was a drug house admissible because it gave the defendant a motive to possess a gun); *Smith,* 292 F.3d at 99 (evidence of drug dealing provided motive for constructive possession of a gun). As the district court stated, "[i]t's probative ... because [it explains] why Andino wanted the gun. It's all part of the whole procedure that was taking place."

The fact that Andino wanted to shoot his attackers is prejudicial to Andino and, perhaps, could also be prejudicial to Sabetta, as a friend of Andino. The district court was within its discretion in concluding that any potential prejudice Andino's testimony caused Sabetta was outweighed by the testimony's probative value of explaining the chain of events. As the district court stated, "[a]ll evidence is prejudicial to [Sabetta] that puts him in possession of that gun ... [b]ut it's not unfairly prejudicial." As a result, we find that the trial court did not abuse its discretion in determining that the probative value of Andino's testimony outweighed any prejudicial effect.

III. *Conclusion*

Sabetta's conviction and sentence are therefore affirmed.

*Affirmed.*

373 F.3d 75, 64 Fed. R. Evid. Serv. 645

Briefs and Other Related Documents (Back to top)

. 03-1506 (Docket) (Apr. 15, 2003)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.